**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ANTOINETTE MUKAKABANDA,

   Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

   Defendant.

No. 15-CV-00116-CJW

**MEMORANDUM OPINION AND ORDER**

_____

### *TABLE OF CONTENTS*

*I.* *BACKGROUND*..................................................................................... *2*

*II.* *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*.......................................................................................... *3*

*III.* *THE ALJ'S FINDINGS* ..................................................................... *6*

  *A.* *Spine MRI Exams at St. Luke's Hospital*..................................... *10*

  *B.* *Records from St. Luke's Work Well Clinic*................................... *10*

*IV.* *SUPPLEMENTAL EVIDENCE SUBMITTED ON APPEAL* .................... *13*

*V.* *THE SUBSTANTIAL EVIDENCE STANDARD*................................... *14*

*VI.* *DISCUSSION*.................................................................................... *15*

  *A.* *Claimant Argues ALJ Failed to Consider Claimant's Receipt of Long-Term Disability Insurance Benefits* ................................ *16*

**B.** **Claimant Argues Language Issues at the Hearing Constitute Reversible Error** .................................................................. **23**

**VII. CONCLUSION** ...................................................................... **24**

The plaintiff, Antoinette Mukakabanda (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Claimant contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision. For the reasons that follow, the Commissioner's decision is reversed and remanded for further proceedings consistent with this order.

## I.  BACKGROUND

Claimant was born in 1961, has a high school education, and has past work as a cleaner/housekeeper and as a janitor. AR 35, 180. Claimant filed an application for DIB on January 23, 2012, alleging a disability onset date of January 13, 2011. AR 13. She contends she is disabled due to the following impairments: degenerative disc disease and myofascial pain. AR 15. Her claim was denied. AR 13.

Claimant then requested a hearing before an Administrative Law Judge (ALJ) on December 28, 2012. AR 13. ALJ Eric S. Basse conducted a video hearing on April 4, 2014, at which claimant, claimant's attorney, Corbett Luedeman, and a vocational expert (VE), Carma A. Mitchell, testified. AR 13. Also at the hearing, claimant's son, Gilbert Grant, served as an interpreter for claimant in her native language of Kinyarwanda. AR 13. On May 19, 2014, the ALJ issued a decision denying claimant's claims. AR 13–22. On August 28, 2015, the Appeals Council denied claimant's request to review. AR

1–5.  The ALJ's decision, thus, became the final decision of the Commissioner.  AR 1; 20 C.F.R. § 404.981.

Claimant filed a complaint (Doc. 3) in this Court on October 29, 2015, seeking review of the ALJ's decision.  With the consent of the parties, the Honorable Linda R. Reade, Chief United States District Court Judge, transferred this case to a United States magistrate judge for final disposition and entry of judgment (Doc. 11—signed by the Court on April 11, 2016, and filed on the docket on April 12, 2016).  The parties have briefed the issues, and the matter is now fully submitted.  On June 8, 2016, this case was deemed ready for decision.  Doc. 15.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505.  An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  If the claimant is able to do work which exists in the national economy, but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.  20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is

considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still do his/her past relevant work, then he/she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. § 404.1545(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 404.1520(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §

5

404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 404.1545(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 13, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq.).*

3. The claimant has the following severe impairments: degenerative disc disease and myofascial pain by report (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 § C.F.R. 404.1567(h) with the following restrictions: She is frequently able to climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. She is precluded from climbing ladders, ropes, and scaffolds.

6. The claimant is capable of performing past relevant work as a housekeeping cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2011, through the date of this decision (20 C.F.R. § 404.1520(f)).

AR 15–21. While working as a maintenance worker at the Cedar Rapids Community Schools, claimant injured her back in October 2009. AR 365. The Court now summarizes the evidence on the record, first the medical evidence, and then the other evidence.

Dr. Stanley J. Mathew, MD

Dr. Mathew is claimant's treating physician.[1] In regard to claimant's injury at work, William J. Manely, PA-C (Physician's Assistant-Certified) from St. Luke's Hospital Work Well Clinic, referred the treatment of claimant to Dr. Mathew at St. Luke's Spine Center in Cedar Rapids, Iowa, on April 26, 2010. AR 365.

On January 21, 2011, Dr. Mathew completed an official disability rating of claimant. He concluded that—based on his monthly treatment visits with claimant since May 18, 2010—claimant had a "6% impairment of whole person based on her symptomatology and physical findings for her low back pain." AR 402. Also, Dr. Mathew found that claimant had "work restrictions at this time of 25 pounds, no repetitive squatting, bending, lifting, pushing or pulling." AR 402.

---

[1] A *treating source* is an acceptable medical source who has an ongoing treatment relationship providing medical treatment or evaluation to the claimant. 20 C.F.R. § 404.1502. Under agency regulations, an *acceptable medical source* includes licensed physicians, either medical or osteopathic doctors. *Id.* § 404.1513(a). An ongoing treatment relationship is generally established when the medical evidence is consistent that the claimant has seen "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.* § 404.1502. Here, Dr. Mathew is a medical doctor and, thus, an acceptable medical source. Dr. Mathew has been treating claimant in monthly intervals over the last three years. AR 531 (not 30 years as claimant's brief states in a typological error, Doc. 13, at 5). Thus, Dr. Mathew is claimant's treating source.

Dr. Mathew's relevant treatment notes can be summarized, as follows:

On November 30, 2010, Dr. Mathew's treatment note listed claimant's functional status as "independent in ambulation and all activities of daily living" and he noted that "new work restrictions were written, only able to lift 30 pounds. She is able to work eight hours a day. No repetitive pushing, pulling, bending, or lifting." AR 430–31.

On January 21, 2011, Dr. Mathew responded to an inquiry from EMC Insurance Company, and wrote "[claimant] is able to walk 2 to 3 blocks independently, depending on her level of pain . . . . She has an x-ray that shows early degenerative changes at L4-L5. She did have an EMG dated July 1, 2010, which was essentially normal for left LS radiculopathy, neuropathy or plexopathy." AR 432–33. Also, Dr. Mathew wrote that claimant would keep her current pain medication regime. And lastly noted that "[p]atient has work restrictions at this time of 25 pounds, no repetitive squatting, bending, lifting, pushing or pulling." AR 433.

On January 25, 2011, Dr. Mathew's treatment note stated that claimant could walk "1 to 2 blocks independently" and that her current medication would be continued. AR 436. From April 2011 to August 2011, the notes again stated that claimant could walk "1 to 2 blocks independently." AR 439, 441, 443. On September 14, 2011, Dr. Mathew's treatment note stated that claimant was currently taking Flexeril, Diclofenac, and Norco for pain; and claimant stated that her pain medication regime was controlling her pain. AR 446.

On November 5, 2011, Dr. Mathew responded to an inquiry from claimant's attorney, Mr. Nelson, and stated:

> I do find that [claimant's] complaints of pain and discomfort are credible. Based on her injury and diagnosis as well as level of discomfort, it is reasonable for [claimant] to have difficulty of sitting for more than 20 minutes. She will also have difficulty standing for more than 30 minutes.

It is also reasonable that [claimant] will need to lie down 3 or 4 times a day
to help relieve some of her back pain.

AR 453.  Overall, several of Dr. Mathew's treatment notes stated that claimant is "[i]ndependent in ambulation with all activities of daily life."  AR 430, 446, 448, 450, 454, 456.

Dr. Matthew Byrnes, DO

Dr. Byrnes is a non-examining, state agency medical consultant.  On reconsideration review of the whole record, Dr. Byrnes found claimant was capable of medium work, frequent lifting or carrying of 25 pounds, and occasionally climbing ladders/scaffolds/ropes, frequent kneeling, frequent stooping, frequent crawling, and frequent crouching.  AR 74.  The ALJ gave Dr. Byrnes' opinion "less than great weight" because the ALJ determined that the medical evidence on the record supported a finding that claimant was only capable of light work, instead of medium work.  AR 19.  The ALJ gave the treatment records and assessments by Dr. Mathew and Dr. Manshadi on claimant's lifting/carrying abilities "greater weight" than Dr. Byrnes' opinion.  AR 19.

Medical reports requested by Cedar Rapids Community School District

Claimant was treated for a follow-up for her chronic low-back pain after a work injury.  Exhibit 1F.  These reports all precede claimant's alleged disability onset date of January 13, 2011.  *See Dipple v. Astrue*, 601 F.3d 833, 834 (8th Cir. 2010) (finding the alleged disability onset date by claimant starts the relevant time period).[2]  The medical reports requested by Cedar Rapids Community School District fall into the following two categories:

---

[2] The court only summarizes these reports to develop the chronological progression of claimant's treatment history.  These reports, preceding the alleged onset date of disability, do not factor into the court's analysis of "substantial evidence."

## A. Spine MRI Exams at St. Luke's Hospital

On April 22, 2010, Dr. Theodore S. Donta, MD, signed a medical report stating that claimant displayed "[e]arly degenerative changes at L4-L5 [spinal segment]." AR 367.

## B. Records from St. Luke's Work Well Clinic

Dr. Edward J. Ford's treatment note from January 7, 2010, stated that claimant had "plateaued" with her rehabilitation and pain. AR 396. And that "we will go ahead and reduce her to 20 pounds and a four-hour shift." AR 396. Dr. Ford's treatment note from January 19, 2010, made an entry that, per claimant's own request, "we did move her to an eight-hour shift." AR 392. Dr. Ford's treatment note from February 23, 2010, recorded that "we will go ahead and advance the patient on paper to 30 pounds from 20 pounds maximum lifting with similar equivalent pushing and pulling parameters." AR 384. Claimant also asked about taking breaks during her work shift; Dr. Ford considered this to be a "significant deterioration and worsening and I discouraged this." AR 384. And lastly, Dr. Ford's treatment note from March 18, 2010, stated "[r]echeck today. Not much progress since last note." AR 380. On April 15, 2010, William J. Manely, PA-C, wrote a "team coverage note" for Dr. Ford. It stated that claimant is "capable of remaining at work with the limitations of maximum lifting and carrying of 40 pounds." AR 374. On April 26, 2010, another team coverage note read that claimant is "capable of working with the light duty limitations of no lifting and carrying greater than 40 pounds. We are requesting carrier approval for a referral for consultation and evaluation and treatment by Dr. Mathew." AR 372.

Workers' Compensation Claim (EMC Insurance Companies)

Claimant brought a worker's compensation claim against the Cedar Rapids Community School District (School District), which was insured on this claim by EMC

Insurance Companies. On January 25, 2012, claimant, the School District, and EMC Insurance Companies entered into a Compromise Settlement wherein claimant was awarded a lump-sum payment of $147,000 in exchange for waiving "future claims or benefits under the Iowa Workers' Compensation Law for the injury(ies) compromised." AR 176–78. The settlement was for claimant's injury dated October 30, 2009. After a reduction for attorney fees and future medical expenses, claimant received $94,500, which is paid out in weekly payments of $61.81. AR 178. Below is a summary of the relevant evidence submitted in connection with the workers' compensation claim.

First, Dr. Manshadi performed an independent medical examination on claimant on June 23, 2011. AR 403–08. In a letter addressed to claimant's attorney, Dr. Manshadi wrote:

> I believe [claimant] is at maximum medical improvement for the 10/30/09 work injury. I also believe that she has a partial permanent impairment in regard to her back injury . . . and I assign six (6) percent impairment of the whole person. Further, I do recommend permanent work restrictions of no lifting of more than 20 pounds. She is to avoid repetitious bending and stooping at her waist, no twisting, and no crawling.

AR 407–08. The ALJ found Dr. Manshadi's assessment to be consistent with "some requirements of light work." AR 19. Furthermore, vocational consultant, Barabara Laughlin, MA, completed a vocational report dated November 28, 2011. AR 246. She based her report on Dr. Mathew's treatment history, Dr. Manshadi's IME, PA-C Feickert's notes at Mercy Hospital during November/December 2009. AR 247–48. Ms. Laughlin found that as claimant needed to "l[ie] down three to four times per day in my opinion [that] renders her unemployable. . . . It is my opinion that [claimant] has a loss of employability of 90-100% considering the restrictions of Dr. Mathew, her treating medical provider." AR 255.

Also, Dr. Mathew responded to an inquiry from EMC Insurance Companies requesting an official disability rating of claimant.  AR 432.  On January 21, 2011, Dr. Mathew wrote that:

> [Claimant] is able to walk 2 to 3 blocks independently, depending on her level of pain . . . .  She has an x-ray that shows early degenerative changes at L4-L5.  She did have an EMG dated July 1, 2010, which was essentially normal for left LS radiculopathy, neuropathy or plexopathy . . . .  Patient has work restrictions at this time of 25 pounds, no repetitive squatting, bending, lifting, pushing or pulling. . . .  I would give her a 6% impairment of whole person based on her symptomatology and physical findings for her low back pain.  She should continue the above work restrictions.

AR 432–33.

## Long Term Disability Benefits Claim (Madison National Life Insurance Company)

Claimant brought a separate action against the School District and a different insurance carrier, Madison National Life Insurance Company (Madison Life), seeking long term disability (LTD) benefits.  On August 15, 2013, Madison Life granted claimant's appeal of LTD benefits.  AR 528–30.  Madison Life found claimant met the policy's requirements for total disability benefits.  AR 529.

Specifically, the insurance policy defined "totally disabled" as:

1. you cannot perform each of the substantial and material duties of your regular occupation [because of injury or sickness]; and
2. after benefits have been paid for 24 months, you cannot perform each of the substantial and material duties of any gainful occupation for which you are reasonably fitted by training, education or experience [because of injury or sickness], and
3. you are under the regular care and attendance of a physician [because of injury or sickness].  "Regular care and attendance" means observation and treatment by a physician.  Such care and attendance are as required by current standards of medicine for the injury or sickness causing total disability.

AR 528.  Madison Life relied on an independent vocational review by Teresa Marques, MBA.  AR 529.  Ms. Marques used the following limitations; namely, that claimant could: lift up to ten pounds, sit for one hour, stand for one hour, alternate between sitting and standing for two hours, occasional stooping and bending, and no upper extremity restrictions.  *Id.*  Also, Dr. Hardik A. Vashi, DO, sent an "Independent Advisory Review," dated December 26, 2012, to Madison Life.  AR 238.  Dr. Vashi, a non-examining medical source, concluded that claimant was restricted to lifting between one to ten pounds, and was able to sit/stand/walk for up to one hour each.  AR 238–41.  Dr. Vashi based his findings on his review of claimant's medical history and a phone conversation with Dr. Mathew.  *Id.*  Furthermore, Ms. Laughlin also authored another "Employment Assessment" dated July 15, 2013, addressed to claimant's attorney.  AR 213–34.  This assessment relied on Dr. Mathew's report from May 20, 2013, and Dr. Vashi's report from December 26, 2012.  AR 213.

Representative brief filed with ALJ

Claimant submitted a representative brief to the ALJ.  *See* Exhibit 15E.  The representative brief argued: (1) claimant satisfies the requirements of 20 C.F.R., pt. 404, Subpt. P, Appendix 2, Rule 201.09 or 201.10, as she is only capable of sedentary work; and (2) there is no work in the national economy that she can perform with a RFC limited to sedentary work.  AR 333.  The ALJ gave the brief "little weight" as he assessed claimant's RFC to include light work.  AR 20–21.

## IV.    SUPPLEMENTAL EVIDENCE SUBMITTED ON APPEAL

Claimant attached a post-hearing exhibit to her appeal (Exhibit 17E).  This supplemental evidence consisted of an argumentative brief from claimant's attorney addressed to the Appeals Council.  AR 336–40.  Claimant's post-hearing brief argued that: (1) ALJ doubted that claimant was telling the truth about her ability to communicate in English,

and if the ALJ considered such in determining claimant's credibility, then this was an improper consideration; (2) the treating source was not given great weight; and (3) the substantial evidence on the record supports finding claimant is disabled.  AR 336–40.

## V.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645.  The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, a court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted).  A court considers both evidence which supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  A court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, a court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). A court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, a court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where a court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). A court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VI.  DISCUSSION

The Court now turns to address claimant's specific objections to the ALJ's decision.

Claimant alleges the following six arguments. Docs. 3 & 13.

1. ALJ failed to properly consider the evidence, especially Dr. Vashi's report, concerning claimant's LTD benefits claim;

2. ALJ improperly gave the opinions of treating physician, Dr. Mathew, less than controlling weight, and thus, the RFC is flawed;

3. If ALJ had properly weighed and considered the opinions of Doctors Mathew and Vashi, then claimant's RFC would include only "sedentary work," and therefore, she would be unable to perform past work, and thus, she would be disabled;

4. ALJ did not correctly use the *Polaski* factors to determine the credibility of the claimant's subjective complaints of pain;

5. ALJ posed an inaccurate hypothetical question to the VE; and

6. Language Issues at the Hearing Constitute Reversible Error.

### A. *Claimant Argues ALJ Failed to Consider Claimant's Receipt of Long-Term Disability Insurance Benefits*

Claimant argues that the ALJ failed to evaluate the evidence in the record of Madison Life finding claimant eligible for LTD benefits. Doc. 13, at 9. Claimant cites Social Security Ruling 06-03p. *Id.* Essentially, claimant argues that: (1) ALJ wrongly classified the claimant's claim as a "workers' compensation claim" instead of as a LTD claim, and thus, failed to recognize how similar the standard for "disability" is between the LTD claim and a DIB claim; and (2) ALJ failed to consider Dr. Vashi's opinion. Doc. 13.

In deciding a claimant's DIB claim, the ALJ must evaluate a finding of disability for claimant made by a governmental or non-governmental agency. Social Security Ruling 06-03p reads that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p, 2006 WL 2263437 (Aug. 9, 2006). *See Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996) (upholding ALJ's denial of benefits as there was "strong evidence in the record as a whole" that claimant was not disabled, despite Veterans Administration finding claimant disabled and eligible for both benefits and rehabilitation services); *see also Cranmer v.*

*Colvin*, No. 4:13-cv-00693-NKL, 2014 WL 2828313, at *2–3 (W.D. Mo. June 23, 2014) (finding that an ALJ made an error of law where the ALJ failed to consider the findings by the Missouri Department of Social Services, a state agency, that determined claimant had severe impairments and was disabled during the relevant time period).

Yet, a disability decision made by another agency is not binding on the SSA. Section 404.1504 reads:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. *See Jackson v. Astrue*, Civil No. 12-641 (PJS/JSM), 2013 WL 785698, at *35 n.15 (D. Minn. Feb. 11, 2013) (citing 20 C.F.R. § 404.1504 and stating that "the [disability benefits] decision of a private insurance company is not binding on the Commissioner . . . ."). Thus, the ALJ must consider the insurance company's determination that the claimant was disabled. Such a determination, however, is not binding on the ALJ.

In pertinent part, the ALJ's decision states:

> Finally, the undersigned has considered the fact that the claimant pursued a workers' compensation claim at the same time as the present Social Security claim. On November 28, 2011, Barbara Laughlin, M. A. provided an employability assessment. Based on workers' compensation rules, Ms. Laughlin found that the claimant had an employability loss of 90 to 100 percent (Ex. 1E). *On August 15, 2013, the claimant's insurer found that she "continues to satisfy the policy's requirement for total disability benefits" (Ex. 14F).* As noted above, Dr. Mathew provided at least one report to the claimant's insurer, finding that she had a whole person impairment of six percent (Ex. 2F). In considering these reports and weighing the opinions contained therein, the undersigned notes that the standards for determining disability in workers compensation cases are

completely different that [sic] the standards used in Social Security cases. The undersigned also points out that the medical opinions offered in workers compensation cases fall within two extremes: favoring the individual who filed the claim or favoring the insurance company. With this in mind, the undersigned has fully reviewed and considered the various physicians' reports, including the findings and the determinations of disabled or not disabled. The undersigned accords very little weight to the opinions regarding the nature and severity of the claimant's impairments, due to their inconsistency with Dr. Mathew's treatment records.

AR 21 (emphasis added). In one line of his opinion, the ALJ briefly cited to the LTD benefits claim by stating "[o]n August 15, 2013, the claimant's insurer found that she 'continues to satisfy the policy's requirement for total disability benefits' (Ex. 14F)." *Id.* Exhibit 14F does, indeed, cite to the document by Madison Life granting claimant's appeal for LTD benefits. AR 528–30. Yet, the entire remainder of this paragraph in the ALJ's decision addresses claimant's worker's compensation claim and not her LTD benefits claim.

In examination of the above paragraph, the ALJ mentioned Ms. Laughlin's Employment Assessment dated November 28, 2011 (AR 246), which relates to claimant's workers' compensation claim with EMC Insurance Companies (AR 176). The ALJ also mentioned that Dr. Mathew "provided at least one report to the claimant's insurer." AR 21 (citing Exhibit 2F). Exhibit 2F is dated January 21, 2011, and addressed to EMC Insurance (relating to claimant's workers' compensation claim). The ALJ stated that he considered "these reports and weigh[ed] the opinions contained therein[3]" and concluded that the standard for disability in workers' compensation claims differed from the Social

---

[3] The court finds that "therein" refers to the workers' compensation claim. The court acknowledges that the Commissioner could attempt to argue that "therein" refers to the LTD benefits claim. Yet, this seems illogical given that the entirety of the paragraph, with the exception of the one-sentence mentioning the LTD benefits claim, discussed the workers' compensation claim. This portion of the ALJ's decision lacked clarity.

Security Administration's definition of disability. AR 21. Furthermore, the ALJ discussed how the medical opinions in workers' compensation cases are skewed towards the insurance companies or towards the claimant. *Id.*

The Commissioner argues that the ALJ merely mislabeled the claim as the workers' compensation claim with EMC Insurance Companies, instead of as the LTD benefits claim with Madison Life. Doc. 14, at 14. The Commissioner argues that this mislabeling is a "technicality" and that claimant fails to show reversible error in this mislabeling. Doc. 14, at 14 (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("to show an error was not harmless, [claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred")).

The Court finds the Commissioner's argument unconvincing. The ALJ did not merely mislabel the claim he analyzed in his decision, rather, it appears the ALJ failed to analyze the LTD benefits claim entirely. Or at the very least, his decision lacks such clarity that the Court cannot reasonably conclude he considered the LTD benefits claim. The ALJ was required to consider a finding of disability made by a nongovernmental agency, Madison Life. *See* SSR 06-03p, 2006 WL 2263437 (Aug. 9, 2006). While Madison Life's total disability finding is not binding on the ALJ, the ALJ must consider it and give it more than "implicit rejection." *Morrison v. Apfel*, 146 F. 3d 625, 628 (8th Cir. 1998) (stating that a disability finding by another federal agency—the Department of Veterans Affairs—was "important enough to deserve explicit attention" by the ALJ and deserved discussion in the ALJ's opinion). Here, the ALJ acknowledged that an insurance company found claimant satisfied the insurance policy's requirements for "total disability benefits." AR 21. And, the ALJ cited to the document by Madison Life granting LTD benefits (Exhibit 14F). AR 21. Yet, both before and after acknowledging the "total disability benefits," the ALJ only discussed evidence related to the workers' compensation claim. The workers' compensation claim ended in a Compromise

Settlement without a disability determination of claimant. *See* AR 176–79. The LTD benefits claim, on the other hand, found claimant disabled, and included the standard of disability that was used to find claimant "totally disabled." AR 528–30; *see supra* Section III (excerpting the insurance policy's standards). *See also Mosley v. Comm'r of Soc. Sec.*, No. 1:10-cv-617, 2011 WL 2728375, at *3 (W.D. Mich. June 9, 2011) (stating that an insurance company's one-page letter finding claimant disabled, without describing insurance policy's standards, only had "limited" relevance to the Commissioner). Here, the policy standards used by Madison Life were explicitly stated in the document at Exhibit 14F.

Two scenarios appear most rational to the Court. Either the ALJ misunderstood the record and believed that the insurance company's finding of total disability dated August 15, 2013, pertained to the workers' compensation claim; or, the ALJ properly analyzed the workers' compensation claim and included a single sentence about claimant's LTD benefits claim, but failed to discuss his analysis on the LTD benefits claim. Regardless of which scenario actually transpired, this portion of the ALJ's decision leaves the Court with uncertainty.

Furthermore, claimant argues that Dr. Vashi's report (Exhibit 9D) was never mentioned nor considered by the ALJ. Doc. 13. Section 404.1527 reads "[r]egardless of its source, we [the ALJ] will evaluate every medical opinion we receive." 20 C.F.R. §404.1527(c). Yet, the ALJ is not required to explicitly discuss every piece of evidence considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."). The Eighth Circuit Court of Appeals held that a failure to cite "specific [medical] evidence does not indicate that such evidence was not considered," and rejected a claimant's argument that the ALJ failed to consider a non-treating psychiatrist's reports where the ALJ had specifically referred to the psychiatrist' findings.

*Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (internal quotation and citation omitted). The court in *Wildman* reasoned that it was "highly unlikely that the ALJ did not consider and reject" the psychiatrist's notes. *Id.* Here, the Court was unable to find any mention of this non-examining, Dr. Vashi, D.O., in the ALJ's decision. *See* AR 15–21. Furthermore, unlike *Wildman*, neither Dr. Vashi's report, nor Dr. Vashi's findings, are cited in the ALJ's decision. *Id.* Therefore, although it may have occurred, the Court cannot, on this record, find it highly unlikely that the ALJ did not consider and reject Dr. Vashi's report.

Ultimately, it is the combination of these two factors that makes the Court uneasy. Namely, the ALJ buried his mention of the LTD benefits claim in the midst of a paragraph solely discussing the unrelated workers' compensation claim (and cited to exhibits only in relation to the workers' compensation claim), and also, the ALJ did not explicitly mention Dr. Vashi or even refer to Dr. Vashi's findings. In combination, these two failures, together, amount to reversible error. The combination of failing to mention Dr. Vashi and burying the LTD benefits claim reference in the midst of a paragraph discussing a workers' compensation case is not a mere "deficiency in opinion-writing." *See Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011) (quoting *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("[A]n arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.")); *see also Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal citations omitted) ("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.").

Due to an absence of clarity in decision, the Court finds it unfortunately necessary to remand the case back to the ALJ for further examination and explanation on this matter

of Madison Life finding claimant eligible for LTD benefits, and Dr. Vashi's findings. On remand, the ALJ should analyze whether Madison Life's determination that claimant was totally disabled, in conjunction with Dr. Vashi's report finding claimant capable of only sedentary work, affects the ALJ's original assessments of: giving treating source Dr. Mathew's medical opinions less than controlling weight;[4] claimant's RFC assessment; claimant's lack of credibility in regard to her subjective complaints of pain;[5] and whether the hypothetical questions to the VE embodied the impairments that are substantially supported by the record as a whole.

---

[4] Overall, the ALJ gave Dr. Mathew's medical opinions "little weight." AR 16–20. The ALJ found Dr. Mathew's treatment notes, spanning over three years, constituted most of the objective medical evidence of record. These treatment notes stated, generally, that claimant was and continued to be independent in ambulation and in all activities of her daily life, her pain medications were controlling her pain, and claimant was able to walk 1 to 2 blocks. *See* 430–31, 432, 433, 436, 439, 441, 443, 446, 448, 450, 454, and 456. The ALJ also gave greater weight to Dr. Mathew's letter to claimant's insurance company, dated January 21, 2011, where Dr. Mathew noted that the pain medication, therapy, and injections were controlling claimant's pain and limited claimant to lifting no more than 25 pounds. AR 17; *see* Exhibit 2F. The ALJ explained that this letter was supported by the assessment of Dr. Manshadi (AR 407–09) who determined, by examining claimant, that claimant could lift/carry up to 20 pounds. AR 19. On the other hand, the ALJ explicitly listed and described his rejection of Dr. Mathew's four opinions provided to claimant's attorneys, dated November 4, 2011, November 5, 2011, May 20, 2013, and November 12, 2013. AR 20. These four opinions included findings that the claimant could lift 10 pounds at most, was restricted to only sedentary work, could only walk 1/4 of a block, could only initially work on a part-time trial basis, could only sit for 20 minutes, could stand for 30 minutes, needed to lie down 3 to 4 times a day, and needed to use a hand-held assistive device for balance. AR 20. On remand, the ALJ needs to determine if this determination if still supported by substantial evidence on the record.

[5] The ALJ found that claimant's statements about her subjective complaints of pain were "not entirely credible." AR 19. The ALJ found that claimant did not make false statements or misstatements deliberately, but that the objective medical records failed to support her claims. *Id.*

### B. Claimant Argues Language Issues at the Hearing Constitute Reversible Error

The claimant argues, in her post-hearing brief, that the ALJ doubted claimant's ability to speak English, and if the ALJ had factored his doubt into his determination of claimant's credibility "as to her description of her physical injuries and conditions," then it was reversible error. AR 337–38. Claimant claimed that Hallex[6] 1-2-6-10 and Hallex 1-2-1-70, pertaining to foreign language interpreters, were violated.[7]

In the ALJ's decision, the ALJ wrote: "[t]he claimant was allegedly unable to communicate in English. For this reason, the claimant's son, Gilbert Grant, attended the hearing and provided interpretation in Kinyarwanda, the claimant's native language." AR 13. Also, the ALJ noted "[a]s of April 1, 2013, she was enrolled in level 1 ESL (Beginning English) class at Kirkwood Community College (Ex. 14E)." AR 17.

---

[6] "HALLEX provides procedural guidance for processing and adjudicating claims at the hearing and Appeals Council levels." *Ellis v. Astrue*, No. 4:07CV1031 AGF, 2008 WL 4449452, at *1 n.2 (E.D. Mo. Sept. 25, 2008).

[7] The Eighth Circuit Court of Appeals has not ruled on whether Hallex has the force of law. *See Ellis*, 2008 WL 4449452 at *16 ("This Court believes that the Eighth Circuit would hold that HALLEX does not have the force of law. *Cf. Shontos v. Barnhart,* 328 F.3d 418, 424 n.7 (8th Cir.2003) (the Social Security Administration's Program Operations Manual System (POMS) guidelines do not have legal force and do not bind the Commissioner; still, an ALJ should consider them)."). *See also Lovett v. Astrue*, No. 4:11CV1271 RWS TIA, 2012 WL 3064272, at *10 (E.D. Mo. July 6, 2012), *report and recommendation adopted*, No. 4:11 CV 1271 RWS, 2012 WL 3062803 (E.D. Mo. July 27, 2012) (internal quotations and citations omitted) ("Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX, other Circuits have, and there is a Circuit split. The Ninth Circuit found HALLEX to be an internal manual with no legal force . . . the Fifth Circuit found that although HALLEX does not carry the authority of the law, where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise be required and should prejudice result from a violation of an agency's internal rules, the result cannot stand . . . the Third Circuit has opined that HALLEX is an internal guidance tool and has no legal force.").

Furthermore, the ALJ wrote that "[i]n an interview conducted in connection with this initial pain [back injury], a Social Security representative noted that the claimant's primary language was "Rowandan" (Kinyarwanda), but that she and her spouse were able to speak "OK" English, with help from their son (Ex.2E)." AR 16.

The Court is unpersuaded that the above constitutes evidence of the ALJ improperly determining the credibility of claimant. Furthermore, on remand, the ALJ must again determine claimant's credibility in light of Madison Life's total disability finding and Dr. Vashi's report. If the ALJ again discredits claimant's credibility, such a determination will be affirmed by a court if it is "supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). If the ALJ considers the relevant *Polaski* factors, as he did before, and gives a good reason for discrediting a claimant's credibility, then the Court must defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001). *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (internal citation omitted) ("The ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints.").

## VII. CONCLUSION

Section 405(g) authorizes two types of remand orders. 42 U.S.C. § 405(g); *see Melkonyan v. Sullivan*, 501 U.S. 89, 98–99 (1991) (stating that § 405(g) authorizes a sentence-four remand and a sentence-six remand). A sentence six remand is only available in two circumstances, either where the Commissioner requests remand before answering claimant's complaint, or where new and material evidence was "for good cause

not presented during the administrative proceedings." *Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000). Neither occurred in this case.

A sentence four remand, however, is appropriate in this case. *See Buckner*, 213 F.3d at 1010 (citing *Melkonyan,* 501 U.S. at 98) ("A sentence four remand is therefore proper whenever the district court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in accordance with such a ruling *."*). The fourth sentence of § 405(g) reads:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eight Circuit Court of Appeals has affirmed a district court's sentence-four remand where "the district court made such a [substantive] ruling, concluding that the Commissioner's decision was not supported by substantial evidence." *Pottsmith v. Barnhart*, 306 F.3d 526, 528 (8th Cir. 2002). *See also Finch v. Apfel*, 993 F. Supp. 712, 714 (E.D. Mo. Jan. 8, 1998) ("[T]he request for remand is based on the Commissioner's determination that the ALJ failed to properly treat the evidence before him . . . a sentence four remand is appropriate."). The Eighth Circuit Court of Appeals has stated that:

> [W]here the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Bowen*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper "where the total record overwhelmingly supports a finding of disability").

In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support[] a finding of disability." *Beeler*, 833 F.2d at 127. Instead,

the Court finds the ALJ erred in not considering the total disability finding by Madison Life in combination with Dr. Vashi's report in his decision to deny claimant's DIB claim. Accordingly, the Court finds that remand is appropriate.

Accordingly, for the reasons set forth above in Section VI(A), this case is **reversed and remanded** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

**IT IS SO ORDERED** this 30th day of January, 2017.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa